1  Glenn R. Kantor, State Bar No. 122643
2   E-mail: gkantor@kantorlaw.net
   Timothy J. Rozelle, Esq. State Bar No. 298332
3   E-mail: trozelle@kantorlaw.net
   KANTOR & KANTOR LLP
4  19839 Nordhoff Street
   Northridge, California 91324
5  (818) 886 2525 (Tel)
   (818) 350 6272 (Fax)
6
   Attorneys for Plaintiff
7  MARINA SHEYNBERG,
   on behalf of herself and all others similarly situated

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| MARINA SHEYNBERG, on behalf of herself and all others similarly situated, | Case No.: |
|---|---|
| Plaintiff, | **CLASS COMPLAINT** |
| v. | **COMPLAINT FOR:** |
| ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, | **(1) COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS;** |
| Defendant. | **(2) CLASS ACTION COMPLAINT FOR CLARIFICATION OF RIGHTS AND BREACH OF FIDUCIARY DUTY** |

## INTRODUCTION AND GENERAL ALLEGATIONS

1.     Hepatitis C was first discovered in 1990 and is a contagious virus that attacks the liver.  It spreads primarily through contact with the blood of an infected person.  In 1992, the United States began screening blood utilized in transplants and transfusions for the presence of contagious diseases including Hepatitis C. Before 1992, Hepatitis C was commonly spread through blood transfusions or transplant surgeries.

2.     Hepatitis C can also be transmitted from mothers to infants at birth. Several factors influence the likelihood that the virus will be passed from mother to

1    child including the viral load of the mother, the gender of the newborn, and

2    whether there is premature membrane rupture.

3         3.     Hepatitis C has six different genotypes, or virus classifications, based

4    on the virus's genetic material in the RNA strands.  Genotype 1 is the most

5    common in the United States.  It accounts for approximately 75% of Americans

6    with the disease and was considered the most difficult genotype to treat.

7    Ms. Sheynberg has genotype 1b Hepatitis C.  Genotypes 2 and 3 are less common,

8    affecting approximately 20% of those with Hepatitis C and are much easier to cure.

9         4.     Hepatitis C is a widespread contagious disease in the United States

10   with severe public health ramifications.  It is estimated that more than three million

11   individuals in the United States are living with chronic Hepatitis C, and it is

12   estimated that 3% of the world's population is infected with the disease.

13   Approximately 15,000 people in the United States die each year due to liver

14   disease caused by Hepatitis C.  By 2000, Hepatitis C had infected almost 600,000

15   people in California alone, and another 5,000 Californians become infected with

16   the virus each year.

17        5.     Hepatitis C can lead to severe liver damage, infections, liver cancer,

18   and even death.  Even before liver deterioration, those with Hepatitis C can suffer

19   other health issues including a higher risk of heart attack, fatigue, joint pain,

20   depression, sore muscles, arthritis, and jaundice.  Centers for Disease Control and

21   Prevention statistics reveal that up to 70% of those with Hepatitis C will develop

22   chronic liver disease, 20% will develop cirrhosis, and 5% will develop liver cancer.

23   Hepatitis C also leads to liver fibrosis, which is the first stage of liver scarring.

24   The degree of fibrosis varies and is described in several stages from F0 to F4.  No

25   scarring in the liver is designated as stages F0 or F1.  Individuals in stage F3 suffer

26   from severe fibrosis and stage F4 indicates cirrhosis.

27   / / /

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    6.    Prior to FDA approval of Harvoni in 2014, the standard of care in the
2    medical community for the treatment of Hepatitis C was a three-drug treatment
3    containing boceprevir, interferon, and ribavirin, at a cost of $170,000.  That three-
4    drug treatment provided a 70% cure rate but came with tremendous adverse side
5    effects including, anemia, insomnia, anxiety, depression, and memory loss.

6    7.    In October 2014, the FDA approved Harvoni, a prescription drug that
7    dramatically changes the lives of those infected with Hepatitis C.  Harvoni is a
8    once daily tablet that can cure Hepatitis C in as little as eight weeks with few side
9    effects.  In clinical studies, 95%-99% of Hepatitis C patients were cured with just
10   eight to twelve weeks of Harvoni treatments.  Since 2014, the standard of care in
11   the medical community for treating Hepatitis C patients is Harvoni, which provides
12   a cure rate of 95%-99% at a cost of $99,000 for a 12-week treatment with little to
13   no harmful side effects.

14   8.    This revolutionary cure is not only far more effective than other
15   treatment options, but eliminates the harmful side effects associated with other
16   available treatments such as Sovaldi, a prescription medication utilized in
17   combination with ribavirin.  Other treatment options result in severe, unbearable
18   side effects such as nausea, fatigue, anemia, insomnia, anxiety, diarrhea, low red
19   blood cell count, depression, memory loss, and muscle, joint, or bone pain.  In
20   contrast, the most severe common side effects associated with Harvoni are
21   tiredness and headaches.  In light of its high success rate and minimal side effects,
22   in 2014 Harvoni was designated by the FDA as a "breakthrough therapy."  This
23   designation is reserved for drugs that have proven to provide substantial
24   improvement over available therapies for patients with serious or life-threatening
25   diseases.

26   9.    Hepatitis C is only the second disease or condition for which a cure
27   has been discovered in a single life-span from the discovery of the disease or
28   condition.  Hepatitis C was discovered in 1990 and the cure arrived in 2014.

Hepatitis C could become completely eradicated in the coming few years as a result of Harvoni, assuming patients, such as Ms. Sheynberg, have access to this incredible cure.

## **THE PARTIES**

10.     Plaintiff MARINA SHEYNBERG resides or may be found in this judicial district, the Northern District of California.  Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

11.     Plaintiff was at all relevant times a covered participant under the Anthem Blue Cross Prudent Buyer  health benefit plan (Group Number: 278462M001) for Intermolecular, Inc. (the "Plan"), an employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to health care benefits.

12.     Defendant ANTHEM BLUE CROSS OF CALIFORNIA LIFE AND HEALTH INSURANCE COMPANY ("Anthem") is a corporation with its principal place of business in the State of California, authorized to transact and transacting business in this judicial district, the Northern District of California, and can be found in the Northern District of California.  Defendant sells and markets its insurance products to millions of consumers in California, and across the nation. Additionally, Anthem offers its claims administration services and insurance products to employers (which offer health benefits to their employees) in California, and across the nation.

## **ALLEGATIONS REGARDING CLASS REPRESENTATIVE**

13.     Ms. Sheynberg has Hepatitis C.  In November 2014, Ms. Sheynberg's treating physician, Dr. Samuel N. Marcus in Mountain View, California, informed her of the available treatment options and her prognosis given those options.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Dr. Marcus is a board-certified gastroenterologist. He received his medical degree from Royal College of Physicians and Royal College of Surgeons of England.

14. On November 13, 2014, Dr. Marcus prescribed Ms. Sheynberg a regimen of Harvoni and promptly requested authorization from Anthem for the medication.

15. On November 21, 2014, Anthem denied Ms. Sheynberg's request for Harvoni treatment, claiming that the medication was "not medically necessary" for her because her liver had not sufficiently deteriorated. According to Anthem, it would only consider approving Harvoni when Ms. Sheynberg's "liver has a certain amount of scarring (advanced fibrosis of stage F3 or greater) on a liver biopsy." *See* Exhibit A.

16. On December 9, 2014, a test was performed on Ms. Sheynberg using the Beckman-Coulter chemiluminescent method in lieu of a liver biopsy, which Ms. Sheynberg did not have performed due to legitimate concerns of complications. The test confirmed that Ms. Sheynberg had a METAVIR score of F0-F1.

17. On February 9, 2015, after completion of Ms. Sheynberg's liver test results, Anthem sent Ms. Sheynberg an identical denial letter stating that Anthem does not approve Harvoni unless the liver has "a certain amount of scarring (advanced fibrosis of stage 3 or greater) on a liver biopsy." *See* Exhibit B.

18. On May 18, 2015, Ms. Sheynberg requested that Anthem reconsider its November 21, 2014 denial of Ms. Sheynberg's claim for Harvoni. She requested that Anthem not complete its review of this denial until she had been afforded the opportunity to supplement the record with medical records.

19. On June 25, 2015, Ms. Sheynberg submitted her completed Request for Reconsideration to Anthem along with her medical records. The evidence that Ms. Sheynberg included in her appeal fundamentally meets the conceptual framework of medical necessity that her Plan's definition encompasses – mainly

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

that extrinsic studies, reports and guidelines justify the position that there are incremental health benefits to treating individuals with earlier stages of liver fibrosis.

20.    On June 30, 2015, Anthem upheld its denial, again claiming that Harvoni was not medically necessary for Ms. Sheynberg because she did not show a liver fibrosis score of F3 or F4, but rather F0-F1.  Anthem left Ms. Sheynberg to live with daily pain, depression, and chronic fatigue, and to wait until her liver drastically worsened before Anthem would approve the medication.  *See* Exhibit C.

21.    As a result of Anthem's unreasonable interpretation of Ms. Sheynberg's Plan and wrongful denial of benefits, Ms. Sheynberg has been unable to begin the Harvoni treatment which would cure her disease.  At a cost of roughly $99,000 for a 12-week regimen, on average, she is unable to pay for the treatment out-of-pocket.

22.    Ms. Sheynberg sought coverage for Harvoni treatment under an Anthem Prudent Buyer Plan, which provides coverage for medically necessary care in exchange for the payment of premiums.  Ms. Sheynberg's Plan defines "medically necessary" as follows:

**Medically necessary** procedures, supplies, equipment or services are those we determine to be:

1. Appropriate and necessary for the diagnosis or treatment of the medical condition;

2. Provided for the diagnosis or direct care and treatment of the medical condition;

3. ***Within standards of good medical practice within the organized medical community***;

4. Not primarily for your convenience, or for the convenience of your *physician* or another provider;

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

5.  Not more costly than an equivalent service or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and the most appropriate procedure, supply, equipment or service which can safely be provided;

6.  The most appropriate procedure, supply, equipment or service must satisfy the following requirements:

a.  There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately *greater risk of harm or complications*, for you with the particular medical condition being treated than other possible alternatives; and

b.  Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable; and

c.  For *hospital stays*, acute care as an inpatient is necessary due to the kind of services you are receiving or the severity of your condition, and safe and adequate care cannot be received by you as an outpatient or in a less intensified medical setting.

*See* Exhibit D (emphasis added).

23.    The American Medical Association defines medical necessity as: "Health care services or products that a prudent physician would provide to a patient for the purpose of preventing, diagnosing or treating an illness, injury, disease or its symptoms in a manner that is: (a) in accordance with generally

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

accepted standards of medical practice; (b) clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) not primarily for the economic benefit of the health plans and purchasers or for the convenience of the patient, treating physician, or other health care provider."[1]

24.     Furthermore, the Institute of Medicine stated that services meeting the requirements of medical necessity will be those that are: "(1) clinically appropriate for the individual patient, (2) based on the best scientific evidence, taking into account the available hierarchy of medical evidence, and (3) likely to produce incremental health benefits relative to the next best alternative that justify any added cost."[2]

25.     Harvoni meets all of these requirements.  Nothing requires that a member allow his or her medical condition to deteriorate to severe fibrosis in order for their care to be considered "Medically Necessary."  But the definition of "Medical Necessary" is not the test that Anthem used to deny Ms. Sheynberg's claim for Harvoni.  Rather, it applied a more restrictive test created by Anthem in an effort to increase company profits by limiting the number of patients who would qualify for this life-saving medication.

26.     Anthem's denial letter states: "We may approve Harvoni when the liver has a certain amount of scarring (advanced fibrosis of stage F3 or greater) on a liver biopsy.  Records we received do not show that your liver has this amount of scarring on a liver biopsy."   Notably, Anthem does not cite to any provision of the Plan in support of this standard.

---

[1] Statement  of the  American Medical Association to the Institute of Medicine's Committee on Determination of  Essential Health Benefits January 14, 2011, http://www.iom.edu/~/media/8D03963CAEB24450947C1AEC0CAECD85.ashx.

[2] *See, e.g.*, Inst. of Med., Essential Health Benefits: Balancing Coverage and Costs xi (2011) (describing the major goals of specifying essential health benefits as "balancing the comprehensiveness of benefits with their cost").

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

27.    Anthem's requirement of severe fibrosis before treatment severely limits insureds' access to medically necessary treatment and places artificial restrictions on treatment that are not disclosed in the Plan.  Ms. Sheynberg had no notice before receiving the November 21, 2014 denial letter that coverage could be determined by anything outside of her Plan, or that Anthem would place arbitrary restrictions on who can access medically necessary treatment.

28.    Despite the plain language of Ms. Sheynberg's Plan, Anthem did not rely on it to determine if Harvoni was covered.  Instead, Anthem used an undisclosed internal guideline (a medical policy), only created to elevate profits over concerns for the health of its insureds.

## GENERAL ALLEGATIONS

29.    This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA.  Jurisdiction is predicated under these code sections, as well as 28 U.S.C. § 1331, as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of fully-insured employee benefit plans, enforcing Plaintiff and the Plaintiff Class' rights under the terms of those employee benefit plans, and to clarify Plaintiff's rights to future benefits under those employee benefit plans.  Plaintiff and the Plaintiff Class seek relief including, but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

30.    Plaintiff and members of the Plaintiff Class have requested that Defendant provide coverage for Harvoni treatment regimens.  Defendant has denied these claims on one or both of two grounds: either stating that based upon (1) its plans' definitions of "medical necessity" and covered benefits or (2) its plans' exclusions for experimental, investigational or unproven services, such

9

1   treatment is not a covered benefit under the plans at issue.

2       31.    Despite the obligations, responsibilities and requirements which arise

3   under ERISA statutes and regulations, Anthem has engaged and continues to

4   engage in claims handling practices which are flatly inconsistent with the ERISA

5   statutes and regulations and the broad protective purposes of ERISA.

6       32.    ERISA requires that all employee benefit plans establish and

7   maintain reasonable claims procedures. Specifically, 29 C.F.R. section 2560.503-

8   1(b)(5) requires that "[t]he claims procedures contain administrative processes and

9   safeguards designed to ensure and to verify that benefit claim determinations are

10  made in accordance with governing plan documents and that, where appropriate,

11  the plan provisions have been applied consistently with respect to similarly situated

12  claimants." 29 C.F.R. § 2560.503-l(b)(5).

13      33.    Despite these clear requirements, Anthem has engaged in and

14  continues to engage in a pattern of unreasonable and egregious claims handling

15  practices which have directly and adversely impacted individuals suffering from

16  Hepatitis C, and particularly those individuals with a METAVIR liver fibrosis

17  staging score[3] of F0, F1 or F2 on a scale F0-F4[4], such as Plaintiff Marina

18  Sheynberg.

19

20

21  [3] The Metavir scoring system was specially designed for patients with hepatitis C. The scoring
    consists of using a grading and a staging system. The grade gives an indication of the activity or

22  amount of inflammation and the stage represents the amount of fibrosis or scarring. The grade is
    assigned a number based on the degree of inflammation, which is usually scored from 0-4 with

23  0 being no activity and 3 or 4 considered severe activity. The amount of inflammation is
    important because it is considered a precursor to fibrosis.

24  [4] The fibrosis score is assigned a number from 0-4:

25          0 = no scarring
            1 = minimal scarring

26          2 = scarring has occurred and extends outside the areas in the liver that contains blood
                vessels

27          3=bridging fibrosis is spreading and connecting to other areas that contain fibrosis
            4=cirrhosis or advanced scarring of the liver

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

10

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

34.     Anthem has applied and continues to apply it is own internal clinical guidelines in a manner which artificially restricts prescription drug treatment of Hepatitis C to individuals with F3 or F4 stage liver fibrosis, a practice wholly inconsistent with the terms of Ms. Sheynberg's Anthem Plan, the terms of the Plans of class members, and in contravention of 29 C.F.R. section 2560.503-l(b)(5).

35.     ERISA only allows claims administrators to rely on internal rules or policies in construing the terms of an employee benefits plan if those rules or policies reasonably interpret the applicable plan.  In violation of ERISA statutes and regulations, Anthem has systematically ignored the treatment recommendations of insureds' providers and used internal clinical guidelines which are inconsistent with the plain language of insureds' plans.

36.     No scientific evidence affirmatively states that treating individuals with F0 – F1 stage fibrosis with Harvoni results in adverse medical outcomes or could best be treated by other means.  Given the effectiveness of the newest, all-oral treatments and the health benefits of treatment for individuals infected with hepatitis C and for society, a panel convened by the California Technology Assessment Forum and several participants on the policy roundtable even concluded that there is a _societal imperative_ to treat all infected patients.

37.     Here, Anthem can point to no generally accepted standards of medical practice in the medical community which allow for artificial limitations on which patients may receive Harvoni treatment.  In fact, claims administrators can rely on internal rules or policies in construing the terms of an employee benefits plan only if these rules or policies reasonably interpret the plan.  *See Smith v. Health Servs. of Coshocton*, 314 F. App'x 848, 859 (6th Cir. 2009); *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1100 (6th Cir. 1993); *also see Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir.1990); *May v. Roadway Express, Inc.*, 813 F.Supp. 1280, 1284 (E.D.Mich.1993).

CLASS COMPLAINT

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

38.     Anthem relies on extrinsic sources to develop these artificially restrictive internal clinical guidelines.  Anthem's arbitrary application of its internal clinical guidelines is "flatly inconsistent with the 'broadly protective' purposes of ERISA" and would allow Anthem the "free reign to re-write plan terms and restrict or broaden coverage as they see fit." *Egert*, 900 F.2d at 1036.

39.     The class members' plans provide coverage for medically necessary care.  The plans contain a definition of medical necessity, which are the only criteria of which Anthem members are aware.  For a medication such as Harvoni to be medically necessary, it must be a drug that a medical practitioner would provide to a member for purposes of treating an illness, injury, or disease, in accordance with generally accepted standards of medicine, clinically appropriate, not primarily for the patient's convenience, and not more costly than an equivalent service that is medically appropriate and likely to produce equivalent therapeutic results.

40.     By using these restrictive medical criteria as a barrier to access Harvoni, Anthem is breaching its Plans' provisions with its members.  The members' plans contain the entirety of the terms of the agreement.

41.     Anthem's investigation of the medical necessity of Harvoni was conducted by unqualified reviewers in violation of California Health and Safety Code section 1367.01, and at odds with the Plan.

42.     Subdivision (e) of California Health and Safety Code section 1367.01 provides, in relevant part, the following:

> [N]o individual, other than a licensed physician or a licensed healthcare professional who is competent to evaluate the specific clinical issues involved in the health care services requested by the provider, may deny or modify requests for authorization of healthcare services for an enrollee for reasons of medical necessity.

Cal. Health & Saf. Code § 1367.01.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

43.     In addition, Anthem has consistently utilized unqualified reviewers in violation of California Health and Safety Code section 1367.01.  Anthem fails to identify the qualifications or specialties of the reviewers in denial letters.  As a result, members are unable to determine if these individuals are competent to evaluate the specific issues, as required by § 1367.01.

## CLASS ALLEGATIONS

44.     This is a class action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of Plaintiff and all individuals:

> whose requests for Harvoni treatment have been denied (at any time under the applicable statute of limitations) under any fully-insured group health insurance ERISA-governed plan issued by Defendant.

45.     Plaintiff and the Plaintiff Class reserve the right under Federal Rule of Civil Procedure Rule 23(c)(1)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

46.     This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

### Numerosity

47.     The potential members of the proposed class as defined are so numerous that joinder of all the member of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under Anthem plans who have been similarly affected.

/ / /

/ / /

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

**Commonality**

2  48.    There are questions of law and fact common to the proposed class that

3 predominates over any questions affecting only the individual class members.

4 These common questions of law and fact include, without limitation:

5  (a)    Whether Defendant wrongfully denied plan benefits under

6  ERISA.

7  (b)    Whether Defendant has breached its fiduciary duties under

8  ERISA in its administration of Plaintiff and the Plaintiff Class'

9  claims for health benefits.

10 **Typicality**

11  49.    The claims of the named Plaintiff are typical of the claims of the

12 proposed class.  Plaintiff and all members of the Plaintiff Class sustained damages

13 arising out of and caused by Defendant's violation of federal law and federal code

14 sections as alleged herein.

15 **Adequacy of Representation**

16  50.    Plaintiff will fairly and adequately represent and protect the interests

17 of the members of the proposed class.  Counsel who represent Plaintiff are

18 competent and experienced in litigating large and complex class actions.

19 **Superiority of Class Action**

20  51.    A class action is superior to other available means for the fair and

21 efficient adjudication of this controversy.  Individual joinder of all members of the

22 proposed Plaintiff Class is not practicable, and questions of law and fact common

23 to the proposed Plaintiff Class predominate over any questions affecting only

24 individual members of the Plaintiff Class.  Each member of the proposed Plaintiff

25 Class has been damaged and is entitled to recovery by reason of Anthem's conduct

26 in denying claims for Harvoni treatment.

27  52.    Class action treatment will allow those similarly situated persons to

28 litigate their claims in the manner that is most efficient and economical for the

1   parties and the judicial system.  Plaintiffs are unaware of any difficulties that are

2   likely to be encountered in the management of this action that would preclude its

3   maintenance as a class action.

4

5                          **FIRST CAUSE OF ACTION**

6              **FOR DENIAL OF PLAN BENEFITS UNDER ERISA**

7       53.    Plaintiff and the Plaintiff Class repeat and re-allege each and every

8   allegation set forth in all of the foregoing paragraphs as is fully set forth herein.

9       54.    Plaintiff and the Plaintiff Class are covered by insurance plans issued

10  by Defendant.  Under the terms and conditions of the insurance plans and

11  applicable federal law, Anthem is required to pay for all medically necessary

12  prescription medication benefits.

13      55.    Defendant violated ERISA by wrongfully asserting that Harvoni

14  treatment is not a covered benefit under the plans.

15      56.    As a direct and proximate result of Defendant's actions in denying

16  claims for medically necessary Harvoni treatment, Plaintiff and the Plaintiff Class

17  were forced financially to forego treatment altogether.  Plaintiff and the Plaintiff

18  Class are entitled to the reasonable value of the medically necessary Harvoni

19  treatment and related expenses.

20      57.    Defendant wrongfully denied Plaintiff and the Plaintiff Class' claims

21  for Harvoni treatment, in the following respects, among others:

22              (a)    Failure to pay prescription drug benefit payments due to

23              Plaintiff and the Plaintiff Class at a time when Defendant knew, or

24              should have known, that Plaintiff and the Plaintiff Class were entitled

25              to those benefits under the terms of the Defendant's plans;

26              (b)    Failure to provide prompt and reasonable explanations of the

27              bases relied on under the terms of the plans, in relation to the

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886-2525

15

applicable facts, laws and plans' provisions, for the denial of the claims for prescription drug benefits;

(c)    Failure to properly and adequately investigate the merits of the Plaintiff and the Plaintiff Class' claims, especially failure to recognize that Harvoni treatment is and has been an FDA-approved treatment;

(d)    Failure to consider the overwhelming medical evidence which showed the requested treatments are safe and effective and applicable to all individuals diagnosed with the deadly disease.

58.    Plaintiff and the Plaintiff Class are informed and believe and thereon allege that Defendant wrongfully denied the claims for benefits by other acts or omissions of which Plaintiff and the Plaintiff Class is presently unaware, but which may be discovered in this litigation and which Plaintiff and the Plaintiff Class will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

59.    As a proximate result of the denial of prescription benefits, Plaintiff and the Plaintiff Class have been damaged in the amount of the cost treatment for their prescribed Harvoni treatment regimen.

60.    As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff and the Plaintiff Class, in pursuing this action, has been required to incur attorneys' costs and fees.  Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff and Plaintiff Class are entitled to have such fees and costs paid by Defendant.

61.    Due to the wrongful conduct of Defendant, Plaintiff and the Plaintiff Class are entitled to enforce their rights under the terms of Defendant's applicable plans and to clarify their rights to future benefits under the terms of the those applicable plans.

/ / /

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

**SECOND CAUSE OF ACTION**

2

**FOR BREACH OF FIDUCIARY DUTY UNDER AN ERISA PLAN**

3

**[29 U.S.C. § 1132(a)(3)]**

4     62.     Plaintiff and the Plaintiff Class repeat and re-allege each and every

5   allegation set forth in all of the foregoing paragraphs as is fully set forth herein.

6     63.     Defendant acts as an ERISA fiduciary with respect to the

7   administration and claims decisions of the group health plans it issues to

8   employers, such as the Plan at issue, within the meaning of 29 U.S.C. §§ 1109(a)

9   and 1002(21)(A).  With respect to these plans, Defendant exercises discretionary

10  authority or control respecting management of the plans, exercises authority or

11  control respecting management or disposition of the plans' assets.  Defendant has

12  the authority, and actually exercises the authority, to fund the plans, make

13  decisions on claims for benefits and appeals thereof, and to write checks for

14  benefits.

15    64.     Defendant has categorically and improperly denied requests for

16  Harvoni treatment, as alleged above.

17    65.     In acting and failing to act as described above, Defendant has

18  breached its fiduciary duties.

19    66.     Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the Plaintiff Class

20  seek equitable and remedial relief as follows:

21         a.     An injunction compelling Defendant to: (1) retract its

22  categorical "investigational" denial basis of Harvoni treatment; (2) provide notice

23  of said determination in the form and manner required by ERISA to all fully-

24  insured plans' subscribers/members who have had requests for Harvoni treatment

25  denied; and (3) provide for the re-review of all improperly denied claims.

26         b.     An accounting of any profits made by Anthem from the monies

27  representing the improperly denied claims and disgorgement of any profits;

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    c.    Such other equitable and remedial relief as the Court may deem

2  appropriate; and

3    d.    Attorneys' fees in an amount to be proven at the time of trial.

4

5    **REQUEST FOR RELIEF**

6    Wherefore, Plaintiff and the Plaintiff Class pray for judgment against

7  Defendant as follows:

8    1.    Payment of health benefits due to Plaintiff and the Plaintiff Class

9  under Defendant's applicable plans;

10    2.    Reconsideration by Anthem of all claims for Harvoni treatment;

11    3.    Injunctive relief, as described above;

12    4.    Disgorgement of all profits unjustly retained by Anthem as the result

13  of its wrongful denials of authorization for Harvoni treatment;

14    5.    Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys'

15  fees incurred in pursuing this action;

16    6.    Payment of prejudgment and post-judgment interest as allowed for

17  under ERISA; and

18    7.    For such other equitable and remedial relief as the Court deems just

19  and proper.

20

21  DATED: July 24, 2015    KANTOR & KANTOR, LLP

22

23    By:  */s/ Glenn R. Kantor*

24    Glenn R. Kantor
    Timothy J. Rozelle
25    Attorneys for Plaintiff
    MARINA SHEYNBERG, on behalf
26    of herself and all others similarly
    situated

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

18

**EXHIBIT A**

Anthem UM Services, Inc.
c/o 8640 Evans Road, Mail Stop B401-03
St. Louis, MO  63134

# Anthem UM Services, Inc.

November 21, 2014

*See D.A*

**ATTN: Confidential UM Information**
2014209050- 945  CID PCM-UMCPA

Dr. SAMUEL MARCUS
2490 HOSPITAL DR STE 240
MOUNTAIN VIEW, CA  94040

Date Created: 11/20/2014
Reference Number: 26570772
Member Name: MARINA SHEYNBERG
Medication: Harvoni Tablet
Provider: Dr. SAMUEL MARCUS
Denial Reason: MEDICAL NECESSITY

Dear Dr. SAMUEL MARCUS:

Anthem UM Services, Inc. provides utilization management services for Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance. We want you to understand how your health plan works so you can get the most from your health plan benefits. Certain medications within your health plan require review to see if they are covered under your description of benefits. Coverage for the requested medication is denied because the medication does not meet the criteria of "medical necessity" under your description of benefits. Medications that are considered not medically necessary are not covered according to your description of benefits. To assist our medical director in making this decision, we have put a process in place to send all information about the service to a clinical reviewer with appropriate credentials.

Based on their opinion, we have determined that coverage for the requested medication is denied.

Our clinical reviewer concluded the following: because of details we received about your liver illness (hepatitis C). We may approve  HARVONI  when the liver has a certain amount  of scarring (advanced fibrosis of stage F3 or greater) on a liver biopsy. Records we received do not show that your liver has this amount of scarring on a liver biopsy. We did not receive a copy of the liver biopsy results. We also were not told you had stable kidney function, liver tests or blood count.. We based this decision on your health plan's prior authorization criteria for  HARVONI.

This review was completed by: Harry Weisman MD

In making medical necessity determinations that are consistent with our contract language, medical reviewers follow established criteria and guidelines when available and applicable to

Anthem Blue Cross is the trade name of Blue Cross of California. Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company are independent licensees of the Blue Cross Association. ®ANTHEM is a registered trademark of Anthem Insurance Companies, Inc. The Blue Cross name and symbol are registered marks of the Blue Cross Association. Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross.

A-19

the member's situation, including the health plan's medical policies, clinical guidelines, and/or other available information such as peer reviewed or evidence based literature. Medical policies are available on our website at www.anthem.com/pharmacyinformation. To request the applicable criteria used in this case, or to request an explanation of the clinical judgment for this determination, or diagnosis and description when available, or any other documents related to this determination, please call Customer Service at 866 297-1013 and it will be provided free of charge. Refer to the subscriber's description of benefits under the section marked exclusions for information on medication.

**Member:** Your provider will receive a copy of this letter. If you have questions about this determination you may call customer service at the number on your health plan identification card. Please see the attached for your additional member rights.

**Provider:** If you have not already done so and would like to discuss this determination with our clinical reviewer, please contact us at 800-794-0838 before all applicable appeals have been completed. At the time of your call, please provide the following:

- Member Name
- Reference Number (from top of this letter)
- Requested Medication
- Member Policy ID Number
- Date of Service

This decision doesn't mean that you can't or shouldn't receive this medication. Only you and your health care providers can decide whether you need it. But, this decision means that if you do receive the medication, it won't be covered by your plan.

If you or your provider disagrees with this decision, please see the attached information for additional rights.

Sincerely,

Michael M. Su, MD, MBA
Medical Director
Utilization Management

cc: MARINA SHEYNBERG

**Providers: You are required to return, destroy or further protect any PHI received on this document pertaining to members that you are not currently treating. Providers are required to immediately destroy any such PHI or safeguard the PHI for as long as it is retained. In no event are you permitted to use or re-disclose such PHI.** A-20

## Rights Available to Members

If you don't agree with this decision, you have the right to ask for a grievance (also known as an appeal). Unless your benefits booklet states otherwise, you must ask for a grievance within 180 calendar days from the date you get this letter. Your provider, or any other person you choose (authorized representative), may ask for a grievance on your behalf. A person of your choice may also help you during the grievance process. You need to let us know, in writing, if you want someone to help or represent you.

## How do I ask for an urgent (expedited) grievance?

An urgent grievance is available if you haven't had services (pre-service) or if you are currently getting services (concurrent care) and you, or your health care provider, believe that your condition could involve an imminent and serious threat to your health, including, but not limited to, severe pain or potential loss of life, limb or major bodily function.

We will let you know the decision within 72 hours after we get a qualifying urgent grievance. We will let you know the decision by phone. We will also send you the decision in writing.

You, or any person you choose, can ask for an urgent grievance in writing or by phone:

| | |
|---|---|
| In writing: | **Overnight mail**<br>**Grievances and Appeals**<br>**21555 Oxnard Street**<br>**Woodland Hills, CA 91367** |
| By phone: | **800-365-0609** or **866-333-4823** (TDD line if you have hearing or speech loss) |

## How do I ask for a standard (not expedited) grievance?

You, or any person you choose, can ask for a standard grievance in writing, by phone or online.

| | |
|---|---|
| In writing: | **Grievances and Appeals**<br>**P.O. Box 4310**<br>**Woodland Hills, CA 91365-4310** |
| By phone: | **800-365-0609** or **866-333-4823** (TDD line for the hearing and speech impaired) |
| Online: | **www.anthem.com/ca** |

We will send a written decision within 30 calendar days from the date we get the grievance. Our response will have reasons for the decision and references to the plan provisions on which the decision was based. However, grievances received over the phone that are not coverage disputes, disputed health care services involving medical necessity or experimental or investigational treatment, and that are resolved by the close of the next business day, will not receive a written response.

## What should my grievance include?

Include, if available, the following information:

- The member's name and ID number;

- The name of the provider who will or has provided care;

- The date(s) of service;

**EXHIBIT B**

**Anthem UM Services, Inc.**
c/o 8640 Evans Road, Mail Stop B401-03
St. Louis, MO 63134

# Anthem UM Services, Inc.

February 9, 2015

2015025943 - 15869 CID PCM-UMCPA
MARINA SHEYNBERG
4950 RAFTON DRIVE
SAN JOSE, CA 95124

Date Created: 11/20/2014
Reference Number: 26570772
Member Name: MARINA SHEYNBERG
Medication: Harvoni Tablet
Provider: Dr. SAMUEL MARCUS
Denial Reason: MEDICAL NECESSITY

Dear MARINA SHEYNBERG:

Anthem UM Services, Inc. provides utilization management services for Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance. We want you to understand how your health plan works so you can get the most from your health plan benefits. Certain medications within your health plan require review to see if they are covered under your description of benefits. Coverage for the requested medication is denied because the medication does not meet the criteria of "medical necessity" under your description of benefits. Medications that are considered not medically necessary are not covered according to your description of benefits. To assist our medical director in making this decision, we have put a process in place to send all information about the service to a clinical reviewer with appropriate credentials.

Based on their opinion, we have determined that coverage for the requested medication is denied.

Our clinical reviewer concluded the following: because of details we received about your liver illness (hepatitis C). We may approve HARVONI when the liver has a certain amount of scarring (advanced fibrosis of stage F3 or greater) on a liver biopsy. Records we received do not show that your liver has this amount of scarring on a liver biopsy. We did not receive a copy of the liver biopsy results. We also were not told you had stable kidney function, liver tests or blood count.. We based this decision on your health plan's prior authorization criteria for HARVONIi.

This review was completed by: Harry Weisman MD

In making medical necessity determinations that are consistent with our contract language, medical reviewers follow established criteria and guidelines when available and applicable to

Anthem Blue Cross is the trade name of Blue Cross of California. Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company are independent licensees of the Blue Cross Association. ®ANTHEM is a registered trademark of Anthem Insurance Companies, Inc. The Blue Cross name and symbol are registered marks of the Blue Cross Association. Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross.

**B-22**



## Rights Available to Members

If you don't agree with this decision, you have the right to ask for a grievance (also known as an appeal). Unless your benefits booklet states otherwise, you must ask for a grievance within 180 calendar days from the date you get this letter. Your provider, or any other person you choose (authorized representative), may ask for a grievance on your behalf. A person of your choice may also help you during the grievance process. You need to let us know, in writing, if you want someone to help or represent you.

## How do I ask for an urgent (expedited) grievance?

An urgent grievance is available if you haven't had services (pre-service) or if you are currently getting services (concurrent care) and you, or your health care provider, believe that your condition could involve an imminent and serious threat to your health, including, but not limited to, severe pain or potential loss of life, limb or major bodily function.

We will let you know the decision within 72 hours after we get a qualifying urgent grievance. We will let you know the decision by phone. We will also send you the decision in writing.

You, or any person you choose, can ask for an urgent grievance in writing or by phone:

In writing:    **Overnight mail**
         **Grievances and Appeals**
         **21555 Oxnard Street**
         **Woodland Hills, CA 91367**
By phone:   **800-365-0609** or **866-333-4823** (TDD line if you have hearing or speech loss)

## How do I ask for a standard (not expedited) grievance?

You, or any person you choose, can ask for a standard grievance in writing, by phone or online.

In writing:    **Grievances and Appeals**
         **P.O. Box 4310**
         **Woodland Hills, CA 91365-4310**
By phone:   **800-365-0609** or **866-333-4823** (TDD line for the hearing and speech impaired)
Online:      **www.anthem.com/ca**

We will send a written decision within 30 calendar days from the date we get the grievance. Our response will have reasons for the decision and references to the plan provisions on which the decision was based. However, grievances received over the phone that are not coverage disputes, disputed health care services involving medical necessity or experimental or investigational treatment, and that are resolved by the close of the next business day, will not receive a written response.

## What should my grievance include?

Include, if available, the following information:

- The member's name and ID number;

- The name of the provider who will or has provided care;

- The date(s) of service;



If your health benefit plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA), and you have exhausted all mandatory appeal rights, you have the right to bring a civil action in federal court under section 502(a) (1) (B) of ERISA.

## Non-ERISA Plan Members

In addition to the rights described in this letter, you have the right to appeal any decision by your plan regarding coverage or payment of claims. If you are dissatisfied with our decision and wish to pursue further action, your plan may have a mandatory dispute resolution provision. Please refer to your benefits booklet for information concerning your specific plan. You may also call Member Services at the phone number on your Member ID card.

## Other helpful resources:

Whether or not you use the grievance rights available to you, you may contact the California Consumer Assistance Program operated by the California Department of Managed Health Care and Department of Insurance at any time:

California Consumer Assistance Program
980 9th St, Suite #500
Sacramento, CA 95814
888-466-2219
http://www.HealthHelp.ca.gov

**EXHIBIT C**

Anthem UM Services, Inc.
Grievances and Appeals
P.O. Box 4310
Woodland Hills, CA 91365

# Anthem UM Services, Inc.

June 30, 2015

Marina Sheynberg
4950 Rafton Drive
San Jose CA 95124

| | |
|---|---|
| Case number: | 173414 |
| Member name: | Marina Sheynberg |
| Member ID number: | 974A52515 |
| Date grievance received: | 06/29/2015 |

Dear Ms. Sheynberg:

Anthem Blue Cross understands your attorney has filed an appeal on your behalf for the denial of Harvoni (medication for Hepatitis C). Your plan has reviewed your specific circumstances and health condition as documented in the appeal and medical records provided by Kantor & Kantor. The appeal was reviewed by a health plan consultant who is board certified in gastroenterology and a health plan medical director, Roland Bastian, M.D., who is board certified in emergency medicine.

We cannot approve the request for Harvoni. We see that you are being treated for an infection (Hepatitis C). We may be able to approve your request if you have a certain amount of liver scarring (liver biopsy showing fibrosis score of F3 or higher on the IASL, Batts-Ludwig, or Metavir scales; or fibrosis score of F4 on the Ishak scale; or mean FibroScan score of 9.5 kPa or higher). We were not given liver biopsy results. Your MRI liver elastography test on February 19, 2015 showed results of only 2.7 kPa. Your FibroSPECT test on December 9, 2014 showed F0-F1 fibrosis, and this test is considered investigational. For these reasons, we believe the Harvoni is not medically necessary for you. We based this decision on your health plan's prior authorization criteria for Harvoni.

Your plan's Evidence of Coverage (EOC), dated March 01, 2015, on pages 127 and 128, defines "Medically Necessary" as:

"**Medically necessary** procedures, supplies, equipment or services are those we determine to be:
1. Appropriate and necessary for the diagnosis or treatment of the medical condition;
2. Provided for the diagnosis or direct care and treatment of the medical condition;
3. Within standards of good medical practice within the organized medical community;
4. Not primarily for your convenience, or for the convenience of your *physician* or another provider;

Anthem Blue Cross is the trade name of Blue Cross of California. Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company are independent licensees of the Blue Cross Association. ® ANTHEM is a registered trademark of Anthem Insurance Companies, Inc. The Blue Cross name and symbol are registered marks of the Blue Cross Association. Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross.

5. Not more costly than an equivalent service or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and

6. The most appropriate procedure, supply, equipment or service which can safely be provided. The most appropriate procedure, supply, equipment or service must satisfy the following requirements:

a. There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately greater risk of harm or complications, for you with the particular medical condition being treated than other possible alternatives; and

b. Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable; and

c. For hospital stays, acute care as an inpatient is necessary due to the kind of services you are receiving or the severity of your condition, and safe and adequate care cannot be received by you as an outpatient or in a less intensified medical setting."

As a result, we are upholding the initial denial as not medically necessary. We recommend that you discuss alternative options with your physician.

Additionally, please refer to page 50 of your EOC. Your policy stipulates the following:

"**Medical Care That Is Not Covered**
**Not Medically Necessary**. Services or supplies that are not medically necessary, as defined."

## Binding Arbitration

If you don't agree with the way this case was handled, please refer to your policy for further instructions on resolving disputes. Your complaint may be subject to binding arbitration in accordance with the terms of your policy.

## ERISA Plan Members

If your health benefit plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA), and you have exhausted all mandatory grievance rights, you have the right to bring a civil action in federal court under section 502(a)(1)(B) of ERISA.

This is our final decision. Your grievance rights with us are exhausted. If you don't agree with this decision, you may have more rights. We've included details with this letter. If you have any questions about this letter, call customer service toll-free at **1-800-365-0609** or **1-866-333-4823** for the hearing and speech impaired. If you prefer, write to **Grievances and Appeals, P.O. Box 4310, Woodland Hills CA 91365**.

Sincerely,

Roland Bastian, MD
Medical Director
Grievances and Appeals

**C-26**

RB:ls

cc: Kantor & Kantor

Enclosures:
DMHC IMR Application and Instructions
Authorized Assistant form
DMHC envelope

## Rights Available to Members

You, or any person you choose (your authorized representative) may ask for and get copies of all documents including the actual benefit provision, guideline, protocol or other similar criterion on which this decision was based. Copies are free. Send a written request to

**Grievances and Appeals**
**P.O. Box 4310**
**Woodland Hills CA 91365**

If you prefer, call customer service at **1-800-365-0609** or **1-866-333-4823** our TDD line for the hearing and speech impaired.

You may ask for the diagnosis and treatment codes that are the subject of the appeal. You may also ask for a description of these codes, if available. Call customer service at the phone number above.

Whether or not you use the grievance rights available to you, you may contact the California Consumer Assistance Program operated by the California Department of Managed Health Care (DMHC) at any time:

California Consumer Assistance Program
980 9th St, Suite #500
Sacramento, CA 95814
888-466-2219
http://www.HealthHelp.ca.gov

## If I don't agree with this decision, what other rights do I have?

The California Department of Managed Health Care is responsible for regulating health care service plans. If you have a grievance against your health plan, you should first telephone your health plan at **1-800-365-0609** or **1-866-333-4823** for the hearing and speech impaired and use your health plan's grievance process before contacting the department. Utilizing this grievance procedure does not prohibit any potential legal rights or remedies that may be available to you. If you need help with a grievance involving an emergency, a grievance that has not been satisfactorily resolved by your health plan, or a grievance that has remained unresolved for more than 30 days, you may call the department for assistance. You may also be eligible for an Independent Medical Review (IMR). If you are eligible for IMR, the IMR process will provide an impartial review of medical decisions made by a health plan related to the medical necessity of a proposed service or treatment, coverage decisions for treatments that are experimental or investigational in nature and payment disputes for emergency or urgent medical services. The department also has a toll-free telephone number (1-888-HMO-2219) and a TDD line **(1-877-688-9891)** for the hearing and speech impaired. The department's Internet Web site **http://www.hmohelp.ca.gov** has complaint forms, IMR application forms and instructions online.

## How do I ask for an IMR?

Included with this letter, you will find:

- IMR Application Instructions;

- An IMR Application;

**C-28**

- A Physician Certification form;
- An Authorized  Assistant form; and
- An envelope addressed to the DMHC.

Complete the IMR Application and send it to the DMHC in the envelope provided. If you want to choose someone to act on your behalf, you will also need to complete the Authorized Assistant form and include it with your IMR Application.

You must send your request for IMR to the DMHC within six months after we send you our written response to your grievance. You don't have to pay an IMR application or processing fee. You, or your physician, have the right to provide additional information to support the IMR request. Please refer to the IMR Application Instructions document for more details about requesting an IMR.

Please note that the IMR process is in addition to any other procedures or remedies that may be available to you. Please refer to your benefits booklet.

# IMR Application Instructions

If your health plan denies your request for medical services or treatment, you can file a complaint (grievance) with your plan. If you disagree with your plan's decision, you can ask the HMO Help Center at the Department of Managed Health Care for an Independent Medical Review (IMR). An IMR is a review of your case by doctors who are not part of your health plan. If the IMR is decided in your favor, your plan must give you the service or treatment you requested. You pay no costs for an IMR.

**You Can Apply for an IMR if Your Health Plan:**
- Denies, changes, or delays a service or treatment because the plan determines it is not medically necessary.
- Will not cover an experimental or investigational treatment for a serious medical condition.
- Will not pay for emergency or urgent medical services that you have already received.

**Before You Apply**
In most cases, you must complete your health plan's complaint process before you apply for an IMR. Your plan must give you a decision within 30 days or within 3 days if your problem is an immediate and serious threat to your health.

If your plan denied your treatment because it was experimental/ investigational, you do not have to take part in your plan's complaint process before you apply for an IMR.

You must apply for an IMR within six months after your health plan sends you a written response to your grievance. We may accept your application after six months, if we determine that circumstances prevented timely submission.

**Please be aware that if you decide not to participate in the IMR process, you may be giving up your statutory rights to pursue legal action against your plan regarding the service or treatment you are requesting.**

**How to Apply**
Fill out the IMR Application Form. Fill out the Authorized Assistant form if someone is helping you with your IMR. If you have medical records from *non-contracting providers* regarding your health care issue, please include them with your application. Your health plan will be required to obtain medical records from contracting providers.
Attach copies of letters or other documents about the treatment or service that your health plan denied. This can speed up the IMR process. Send copies of documents, not originals. The HMO Help Center cannot return documents.

If you have questions about filling out your application form, call the HMO Help Center at (888) HMO-2219 or TDD (877) 688-9891. There is no charge for this call.

Mail or fax your form and any attachments to:
**HMO Help Center**                                    **FAX: (916) 255-5241**
**Department of Managed Health Care**
**980 9th Street, Suite 500**
**Sacramento, CA 95814-2725**

**What Happens if You Qualify for an IMR?**
The HMO Help Center will review your application and send you a letter within 7 days telling you that you qualify for an IMR. When all your information is received, including relevant medical records, the IMR decision will be made within 30 days, or within 3 to 7 days if your case is urgent. You will be notified of the decision made by the doctors who have reviewed your case. If the IMR is decided in your favor, your plan must give you the service or treatment you requested.

**What Happens if You Do Not Qualify for an IMR?**
Your issue will be reviewed through the Department's standard complaint process. You will receive a written notice of our decision within 30 days.

**This Notice is Required by Law**

- California's Knox-Keene Act gives the Department of Managed Health Care (DMHC) the authority to regulate health plans and investigate the complaints of health plan members.
- The DMHC's HMO Help Center uses your personal information to investigate your problem with your health plan and to provide an Independent Medical Review if you qualify for one.
- You give us this information voluntarily. You do not have to give us this information.
- However, if you do not give us the information, we may not be able to investigate your complaint or provide an Independent Medical Review.
- We may share your personal information, as needed, with the health plan and the doctors who are doing the Independent Medical Review.
- We may also share your information with other government agencies as required or allowed by law.
- You have a right to see your personal information. To do this, contact the DMHC Records Request Coordinator, DMHC, Office of Legal Services, 980 9th Street, Suite 500, Sacramento, CA 95814-2725, (916) 322-6727.
- The law that requires this notice is the Information Practices Act of 1977 (California Civil Code Section 1798.71)

State of California, Business,
Transportation and Housing Agency
Department of Managed Health Care
INDEPENDENT MEDICAL REVIEW APPLICATION-
English
DMHC 20-086    New: 01/02    Rev: 04/06

# HMO Help Center

State of California
Department of Managed Health Care



## INDEPENDENT MEDICAL REVIEW APPLICATION

**If you want to give another person the authority to assist you with your IMR, you must also complete the
Authorized Assistant Form.**

### PATIENT INFORMATION

First Name _____Middle Initial ____Last Name _____

Name of Parent or Guardian if Filing for Minor Child _____

Street Address _____

City _____State _____Zip_____

Day Phone # _____Evening Phone # _____

Health Plan Name _____

Patient's Membership Number _____

Patient's Date of Birth (mm/dd/yy) _____

Do you have Medi-Cal?                                                     ☐ Yes          ☐ No

Do you have Medicare or Medicare Advantage?                              ☐ Yes          ☐ No

Have you filed a complaint or grievance with your health plan?           ☐ Yes          ☐ No

Are you seeking payment for a service that you have already received?    ☐ Yes          ☐ No

### YOUR HEALTH PROBLEM (Use a separate sheet and attach other documents if needed.)

1.  What is your health condition or doctor's diagnosis? _____

2.  What medical treatment or service are you requesting? _____

3.  How would you like this case to be decided?_____

4.  Do you have a condition that is a serious threat to your health?      ☐ Yes          ☐ No

    If "yes," please explain._____

5.  Did your health plan say that the treatment you want is (check one):

    ☐ Not medically necessary        ☐☐Experimental or investigational      ☐☐Other (please explain)

6.  List the name and phone number of your primary care doctor and other doctors who have seen, treated or advised you for
    your condition. Are they in your health plan's network? (Use a separate sheet if needed.)

    _____

7.  I am asking for an Independent Medical Review (IMR) to make a decision about my problem with my health plan. I allow my
    providers, past and present, and my health plan to release my medical records and information for this IMR. These records may
    include medical, mental health, substance abuse, HIV, diagnostic imaging reports, and other records related to my case. These
    records may also include non-medical records and any other information related to my case. I allow the Department of Managed
    Health Care (DMHC) and IMR staff to review these records and information. My permission will end one year from the date below,
    except as allowed by law. For example, the law allows the DMHC to continue to use my information internally. I can end my
    permission sooner if I wish. All the information that I have provided on this sheet is true.

    **Patient or Parent Signature** _____**Date**_____

    Mail or fax your form and any attachments to: **HMO Help Center, Department of Managed Health Care, IMR Unit,
    980 9th Street, Suite 500, Sacramento, CA 95814; FAX: 916-255-5241**

State of California, Business,
Transportation and Housing Agency
Department of Managed Health Care
AUTHORIZED ASSISTANT FORM
DMHC 20-160    New: 04/06

State of California
Department of Managed Health Care



**C-31**

## Authorized Assistant Form

- If you want to give another person the authority to assist you with your Independent Medical Review (IMR) or complaint, complete Parts A and B below.

- If you are a parent or legal guardian filing this IMR or complaint for a child under the age of 18, you do not need to complete this form.

- If you are filing this IMR or complaint for a patient who cannot complete this form because the patient is either incompetent or incapacitated, and you have legal authority to act for this patient, please complete Part B only. Also attach a copy of the power of attorney for health care decisions or other documents that say you can make decisions for the patient.

### PART A: PATIENT

I allow the person named below in Part B to assist me in my IMR or complaint filed with the Department of Managed Health Care (DMHC). I allow the DMHC and IMR staff to share information about my medical condition(s) and care with the person named below. This information may include mental health treatment, HIV treatment or testing, alcohol or drug treatment, or other health care information.

I understand that only information related to my IMR or complaint will be shared.

My approval of this assistance is voluntary and I have the right to end it. If I want to end it, I must do so in writing.

Patient Signature _____ Date _____

### PART B: PERSON ASSISTING PATIENT

Name of Person Assisting (print) _____

Signature of Person Assisting _____

Address _____

Relationship to Patient _____

Daytime Phone # _____

Evening Phone # _____

☐ My power of attorney for health care decisions or other legal document is attached.

**C-32**

Anthem UM Services, Inc.
Grievances and Appeals
P.O. Box 4310
Woodland Hills, CA 91365

# Anthem UM Services, Inc.

Kantor & Kantor
19839 Nordhoff St
Northridge CA 91324

## English

IMPORTANT: Can you read this letter? If not, we can have somebody help you read it. You may also be able to get this letter written in your language. For free help, please call right away at 888-254-2721.

## Spanish

IMPORTANTE: ¿Puede leer esta carta? Si no, podemos ayudarlo a leerla. También es posible que reciba esta carta escrita en su idioma. Para obtener ayuda gratuita, llame ahora mismo al 888-254-2721.

## Chinese (Traditional)

重要事項:您是否能閱讀此信?如果無法閱讀,我們將為您提供專員協助服務。我們也能將此信翻譯成您所使用的語言。欲洽詢免費服務,請立即致電888-254-2721。

## Korean

중요 공지: 이 서신을 읽은 데 어려움은 없으십니까? 만일 어려움이 있다면 이 서신을 잘 읽을 수 있도록 도움을 드릴 수 있습니다. 또한 여러분은 이 서신의 한국어 번역본을 제공받으실 수 있습니다. 이 무료 서비스를 원하시는 분은 지금 바로 888-254-2721로 전화하십시오.

Anthem Blue Cross is the trade name of Blue Cross of California. Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company are independent licensees of the Blue Cross Association. ® ANTHEM is a registered trademark of Anthem Insurance Companies, Inc. The Blue Cross name and symbol are registered marks of the Blue Cross Association. Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross.

C-33

**Vietnamese**

QUAN TRỌNG: Quý vị có đọc được lá thư này không? Nếu không, chúng tôi có thể nhờ người giúp quý vị đọc thư. Quý vị cũng có thể nhận thư này bằng tiếng Việt. Để được giúp đỡ miễn phí, xin gọi ngay số 888-254-2721.

**Tagalog**

MAHALAGA: Nababasa ba ninyo ang sulat na ito? Kung hindi, makakakuha kami ng taong makakatulong sa inyo na basahin ito. Maaari ninyo ring makuha ang liham na ito sa inyong wika. Para sa libreng tulong, mangyaring tumawag kaagad sa 888-254-2721.

**Navajo**

Diné bizaad bee shíká' a'doowoł áko díí bik'i'dideeshtį́į́ł nínízingo, éí yídííkił doo bą́ą́h ílínígóó bee níká adoowoł customer service bich'į' béésh bee hodíilnih éí naaltsoos bee nééhózinígíí bine'déé' bikáá'.

**C-34**